IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

ROSEMARY MUGA       *
9419 Merust Lane        *
Gaithersburg, MD 20879      *
   *On her own behalf and on behalf*   *
   *of all others similarly situated,*    *
             *
     Plaintiffs,        *
             *
    v.           *    Case  No. _____
             *
BRANCH BANKING AND TRUST COMPANY   *
150 South Stratford Road, Suite 201    *
Winston-Salem, NC 27104      *
             *
<u>Serve on:</u>           *
THE CORPORATION TRUST INCORPORATED *
351 West Camden Street       *
Baltimore, MD 21201        *
             *
    Defendant.        *
             *
* * * * * * * * * * * *

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

1.   The Plaintiff Rosemary Muga ("Named Plaintiff" or "Plaintiff"), on her own behalf and on behalf of all others similarly situated, files this Class Action Complaint and Demand for Jury Trial through her counsel, Peter Holland of The Holland Law Firm, PC; Scott C. Borison of The Legg Law Firm, LLC; and Justin Zelikovitz and for cause states:

2.   The Plaintiff files this complaint against the Defendant, Branch Banking and Trust Company ("BB&T") because BB&T violated Maryland commercial and common law, and breached contracts, when it repossessed and sold the plaintiff's and other class members' motor vehicles.

3.   The Named Plaintiff and others similarly situated purchased motor vehicles that were financed by retail installment sales contracts ("RISCs") that were assigned to BB&T. Later, BB&T

EXHIBIT

A-2

repossessed and sold the plaintiff's and other class members' motor vehicles. These plaintiff and class members shall be referred to as the "Repossession Class."

4.      After repossessing the Repossession Class' motor vehicles, BB&T sent a form letter ("post-repossession form letter") to the class members that listed a dollar amount allegedly required to get the vehicle back.

5.      BB&T sent no other letter to the Repossession Class before selling their motor vehicles.

6.      BB&T's post-repossession form letter failed to provide the Repossession Class with notice of the time and place of sale of the motor vehicle, as required by both Maryland law and the RISCs.

7.      The failure to provide the time and place of the sale of the cars was done knowingly by BB&T.

8.      When the Repossession Class did not pay the dollar amount demanded on the post-repossession form letter, BB&T sold their motor vehicles.

9.      After selling the Repossession Class' motor vehicles, BB&T sent them another form letter ("post-sale form letter").

10.     BB&T's post-sale form letters did not provide information about the sale that is required to be disclosed by both Maryland Law and the RISCs. The missing information includes but is not limited to such basic information as: (1) the purchaser's name, address, and business address, and (2) the number of bids sought and received at the sale. These omissions were knowing and willful.

11.     The proceeds from the sales of plaintiffs' motor vehicles generally did not cover the

amount BB&T alleged was due under the RISCs. This resulted in an alleged deficiency balance for members of the Repossession Class.

12. In its post-sale form letters, BB&T demands payment of the alleged deficiency.

13. If the consumer borrower does not pay the alleged deficiency, BB&T files a collection lawsuit against the consumer or pursues other collection activities.

14. BB&T has filed lawsuits against the Named Plaintiff and hundreds of others similarly situated. This class of persons shall be referred to as the "Lawsuit Class."

15. Together with the lawsuits it filed against the Lawsuit Class, BB&T attached copies of documents that contained social security numbers, driver license numbers, and other extremely private information of the Lawsuit Class. These disclosures were knowing and willful.

16. The public disclosure of this private information violates numerous duties – statutory and otherwise – that BB&T owes to the Lawsuit Class. Further, the filing of this private information has caused Plaintiff and the Lawsuit Class damages, injury or loss.

17. As a result of BB&T's acts and omissions, Maryland law prohibits BB&T from collecting any alleged deficiency that remained after the sale of the repossessed motor vehicles. This prohibition applies to the Repossession Class.

18. As a result of BB&T's acts and omissions, Maryland law entitles the Repossession Class to statutory damages, compensatory damages, treble damages, declaratory judgment, and injunctive relief.

19. BB&T's violations of Maryland law have enriched Defendant unfairly at the expense of Maryland borrowers in the Repossession Class.

20. BB&T's uniform disclosure of social security numbers, drivers license numbers and

other private information is illegal and constitutes a per se violation of the Maryland Consumer Protection Act.

21.     BB&T's failure to comply with Maryland law is knowing.

22.     BB&T's use of form notices which fail to comply with Maryland law and its failure to provide notices required by Maryland law makes this case particularly suitable for resolution through a class action lawsuit.

## PARTIES

23.     Rosemary Muga is a resident of Maryland who entered into a contract to purchase a vehicle from a Maryland dealership, and who entered into a Maryland retail installment sales agreement by which she financed the purchase of her vehicle. This contract was assigned and sold to BB&T.

24.     BB&T is a North Carolina corporation with North Carolina citizenship with its principal place of business in North Carolina. BB&T is licensed to do business in Maryland, and regularly conducts business and sues consumers in Baltimore City, Maryland.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this case under Md. Cts. & Jud. Proc. § 6-103(b), because BB&T transacts business and performs work and provides services in Maryland, regularly does and solicits business in Maryland, and engages in other persistent courses of conduct in Maryland.

26.     Venue is proper in this Court under Md. Cts. & Jud. Pro. § 6-201, because with the financial services it performs from its 5 branch offices in Baltimore City, and the lawsuits it regularly files against consumers in Baltimore City, BB&T carries on regular business in Baltimore City,

Maryland.

### FACTUAL ALLEGATIONS

27.     On or about June 9, 2007, the Named Plaintiff purchased a used Honda Pilot ("Honda") from Rosenthal Acura of Gaithersburg, Maryland ("Rosenthal").

28.     The Named Plaintiff purchased the car primarily for personal, household and family purposes.

29.     The Named Plaintiff's purchase was financed through a RISC attached as **EXHIBIT 1**.

30.     The RISC affirmatively elects to apply Subtitle 10 of Title 12 of the Commercial Law article to the contract. (i.e., Maryland's Credit Grantor Closed End Credit Provisions (hereafter abbreviated as "CLEC"). See **EXHIBIT 1**, on the reverse side, paragraph 6 ("Applicable Law: Federal Law and Maryland Law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code.")

31.     The RISC further states that "we will send you a written notice of sale before selling the vehicle." Id., reverse side, paragraph 3f.

32.     Rosenthal arranged the financing for the Named Plaintiff's purchase of the Honda. The RISC was then assigned to BB&T, who assumed the contract and received monthly payments, consisting of principal and interest, from the Plaintiff.

33.     On or about March 20, 2008, BB&T and/or its agents repossessed the Honda.

34.     On or about March 20, BB&T sent a post-repossession form letter to the Named Plaintiff, attached as **EXHIBIT 2**, telling her that her car would be sold at a private sale unless she

paid $540.92. This form letter failed to advise the Named Plaintiff of basic information about the time and place of the proposed sale. Instead, the letter simply stated that if she failed to tender the $540.82 within 15 days of March 20, 2008, then, the vehicle would be sold "by private sale beginning 04/04/2008, or thereafter until sold." On information and belief, this letter is identical (apart from the specific dollar amounts listed) to the post-repossession letters sent to every member of the Repossession Class.

35.    No further letters were sent to the Plaintiff before the car was sold. On information and belief, no further letters were sent to any member of the Repossession Class before the sale of their motor vehicles.

36.    On or about October 1, 2009, BB&T sent the Plaintiff a post-sale form letter, attached as **EXHIBIT 3**. This letter advised the Plaintiff that her that her car had been sold on an unspecified date at a private sale, and demanded payment of $10,931.96.

37.    This post-sale form letter did not include mandated disclosures including but not limited to: (1) the purchaser's name, address, and business address, and (2) the number of bids sought and received at the sale. On information and belief, none of the post-sale form letters sent to members of the Repossession Class included this information.

38.    Maryland's CLEC governs BB&T's repossession and sale of the Repossession Class' motor vehicles. CLEC requires that credit grantors such as BB&T provide 10-days' notice of the time and place of a sale of repossessed property, as well as provide an accounting after sale that includes, among other things: (1) the purchaser's name, address, and business address, and (2) the number of bids sought and received at the sale.

(j)    *Sale or auction - Authorized; notice; commercially reasonable manner;*

*accounting. --*
    (1)
        (i)    Subject to subsection (1) of this section, the credit grantor shall sell the property that was repossessed at:
              1.    Subject to paragraph (2) of this subsection, a private sale; or
              2.    A public auction.
        (ii)    **At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address.**
        (iii)    Any sale of repossessed property must be accomplished in a commercially reasonable manner.
    (2)    **In all cases of a private sale of repossessed goods under this section, a full accounting shall be made to the borrower in writing** and the seller shall retain a copy of this accounting for at least 24 months. **This accounting shall contain the following information:**
        (i)    The unpaid balance at the time the goods were repossessed;
        (ii)    The refund credit of unearned finance charges and insurance premiums, if any,
        (iii)    The remaining net balance;
        (iv)    **The proceeds of the sale of the goods;**
        (v)    The remaining deficiency balance, if any, or the amount due the buyer;
        (vi)    **All expenses incurred as a result of the sale;**
        (vii)    **The purchaser's name, address, and business address;**
        (viii)    **The number of bids sought and received; and**
        (ix)    **Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.**

Md. Comm. Law Art., § 12-1021 (j) (emphasis added).

    39.    BB&T's post-repossession form letter violates CL § 12-1021(j)(1)(ii) because it failed to provide Named Plaintiff 10-days notice of the time and place her car would be sold. **EXHIBIT 2.** On information and belief, BB&T's post-repossession letters to the Repossession Class also violated Md. Comm. Law Art., § 12-1021(j)(1)(ii) for the same reasons.

40. Moreover, on information and belief, BB&T systematically and routinely fails to state the date of sale in its post-repossession form letters. On information and belief, it is BB&T's standard practice to state that a repossessed vehicles will be sold 15 days from the date on its post-repossession form letter when, in fact, such date rarely if ever coincides with the actual date of sale. The actual date of sale is a material fact and the accurate time is required by CLEC. BB&T's own paperwork shows that BB&T did not ever, tell the Plaintiffs the time and date of the sale. *See* **EXHIBITS 2 AND 3.** By failing to accurately inform the Plaintiff and the Repossession Class of the final date by which they must redeem their vehicle, and the time and place of the sale, BB&T denied the Plaintiff and the Repossession Class important rights and violated CLEC.

41. BB&T's post-sale form letter also violates CL § 12-1021(j)(2) by failing to make the full accounting required. Among its deficiencies, BB&T's form notice failed to disclose to the Named Plaintiff: (1) the purchaser's name, address, and business address, and (2) the number of bids sought and received. On information and belief, BB&T's post-repossession letters to the Repossession Class also violated CL §12-1021(j)(2) for the same reasons.

42. BB&T's failure to provide the full accounting and material facts whose disclosure is mandated by CL § 12-1021(j) deprived the Named Plaintiff and members of the Repossession Class of information to which they were entitled by law. The disclosures mandated by CL § 12-1021(j) are intended to help borrowers like the Named Plaintiff and the Repossession Class protect their interests in their vehicles, and to hold credit grantors such as BB&T accountable for selling the vehicles in a commercially reasonable manner. Without disclosure of the information required by CL § 12-1021(j), the Named Plaintiff and members of the Repossession Class do not know how long they have to redeem the vehicles or whether BB&T's claimed deficiencies are reasonable and in

compliance with the law.

43.     Absent strict compliance with the statutorily required notices regarding repossession, a Maryland credit grantor may not lawfully assess or collect any deficiency from consumer borrowers, or any other person liable under the contract, following disposition of the repossessed property.  CLEC specifically provides:

> If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement.

CL § 12-1021(k)(4).

44.     In addition, absent strict compliance with the statutorily required notices regarding repossession, a credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." CL § 12-1018(a)(2). Further, a credit grantor such as BB&T which knowingly violates any provision of the CLEC is liable for additional statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC.  CL § 12-1018(b).

45.     On information and belief, before selling a vehicle following its repossession, and as a part of its routine business practices in Maryland, BB&T systematically and regularly fails to send its Maryland customers a proper written notice via certified mail, return receipt requested, giving the customer at least 10 days notice of the time and place of the sale, in violation of CL § 12-1021(j)(1)(ii).

46.     On information and belief, as a part of its routine business practices in Maryland, BB&T unfairly and deceptively states simply that it will sell the vehicles if the consumers do not redeem within 15 days; BB&T offers no date or time or location whatsoever.

47.    On information and belief, as a part of its routine business practices in Maryland, BB&T systematically and regularly sends post-sale form letters which do not provide the full accounting and disclosures mandated by CLEC at CL § 12-1021(j)(2). Specifically, BB&T routinely and regularly omits from its disclosures: (1) a statement of the purchaser's name, address, and business address, and (2) a statement of the number of bids sought and received.

48.    On information and belief, notwithstanding BB&T's failure to comply with CLEC's mandatory notice requirements, BB&T has knowingly assessed, demanded and attempted to collect or has collected alleged deficiency balances from the Named Plaintiff and the Repossession Class, for which the borrowers were not liable as a matter of law. On information and belief, BB&T has made unlawful collection demands to the Named Plaintiff and the Repossession Class for amounts exceeding four million dollars in the aggregate, has falsely represented to those borrowers that deficiency balances were owed, has collected money from borrowers to which they were not entitled, and has threatened to sue, and has sued, borrowers who did not owe any deficiency.

49.    On information and belief, at all relevant times, BB&T has had actual knowledge that the Named Plaintiff and the Repossession Class were not liable for any deficiency as a result of BB&T's failures to comply with CLEC, but has nevertheless persisted in its unlawful collection activities. BB&T has not returned to the Named Plaintiff and the Repossession Class the interest, costs, fees and other charges which it must forfeit on each credit contract pursuant to CLEC, CL § 12-1018 (a)(2). Unless and until this Court grants the declaratory and injunctive relief that Plaintiffs seek through this action, BB&T will continue to engage in business practices which violate CLEC and which result in deficiency judgments to which BB&T is not entitled.

50.    As part of its routine business practices in Maryland, BB&T illegally, unfairly and

deceptively includes private information (such as social security numbers) of the Named Plaintiff and the Lawsuit Class in public court filings.

## CLASS ACTION ALLEGATIONS

51.     The Named Plaintiff brings this action individually and on behalf of: (1) a Repossession Class; and (2) a Lawsuit Class.

52.     The Repossession Class consists of:

**all persons whose vehicles were repossessed and sold by BB&T pursuant to a credit contract governed by CLEC, and as to whom BB&T:**

> **(a)     did not send the borrower a post-repossession letter that provided 10-days' notice of the time and date of sale as mandated by CL § 12-1021(j)(1)(ii); and/or,**
>
> **(b)     did not send the borrower the post-sale accounting and disclosures mandated by CLEC, § 12-1021 (j)(2).**

Excluded from the Class are (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals, (b) any individual who was not a resident of the State of Maryland as of the date that his or her vehicle was repossessed; (c) any individuals against whom a judgment has been granted in favor of BB&T on the account at issue on or before the date of the filing of this Complaint, (d) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Installment Contract; and (e) any individual otherwise obligated on an Installment Contract account that was satisfied in full more than six months prior to the filing of this Complaint.

-11-

53.   The Repossession Class, as defined above, is identifiable. The Named Plaintiff is a member of the Repossession Class.

54.   The Repossession Class consists, at a minimum, of several hundred or thousands of persons who entered into credit contracts in Maryland which were assigned to BB&T and whose vehicles were subsequently repossessed and sold, and is thus so numerous that joinder of all members is clearly impracticable.

55.   There are questions of law and fact which are not only common to the Repossession Class but which predominate over any questions affecting individual class members. The common and predominating questions include, but are not limited to:

(a) Whether BB&T failed to provide notices required by and compliant with CLEC, § 12-1021(j)(1)(ii) to borrowers whose motor vehicles were repossessed;

(b) Whether BB&T failed to provide the full accounting and disclosures required by and compliant with CLEC, § 12-1021(j)(2) to borrowers whose motor vehicles were repossessed and sold at a private sale;

(c) Whether BB&T knowingly violated CLEC provisions and therefore should be required to pay three times the amount of interest, fees and other charges collected;

(d) Whether BB&T misrepresented in writing to the Repossession Class the Defendant's right to collect funds from members of the Class;

(e) Whether BB&T misrepresented in writing to the Repossession Class the motor vehicle's date of sale;

(f) Whether BB&T failed to identify the date, time and location at which the vehicles of Repossession Class' members would be sold;

-12-

(g) Whether BB&T breached the credit contracts it accepted for each Repossession Class member by failing to comply with CLEC;

(h)  Whether BB&T assessed, attempted to collect and/or collected deficiency balances from members of the Repossession Class that it had no legal right to demand or collect, and for which the Repossession Class members were not liable; and

(i) Whether declaratory and injunctive relief is proper, to prevent BB&T from continuing to seek deficiency judgments in violation of CLEC and to compel BB&T's compliance with CLEC.

56.  Claims of the Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of BB&T. The prosecution of separate actions by individual members of the Repossession Class would create a risk of establishing incompatible standards of conduct for BB&T, within the meaning of Maryland Rule 2-231(b)(1)(A).

57.  BB&T's actions are applicable to the Repossession Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

58.  Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Repossession Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(b)(3). The likelihood that individual members of the Repossession Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and the fact that BB&T affirmatively misrepresents to consumers their rights and obligations. Plaintiffs' counsel are

experienced in class actions, and foresee little difficulty in the management of this case as a class action. Named Plaintiff is adequate and will fairly represent the interests of the Repossession Class in accordance with their affirmative obligations and fiduciary duties.

59.    Named Plaintiff also brings this action on behalf of a second Class referred to as the "Lawsuit Class," which consists of:

**all persons against whom BB&T filed a lawsuit in a Maryland Court seeking damages and as to whom BB&T:**

**(a)    included a copy of the Lawsuit Class members' personal information, including in such lawsuit filing the Lawsuit Class members' social security numbers, drivers license numbers or other private personal information.**

Excluded from the Class are (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals, (b) those individuals who were not a resident of Maryland at the time the lawsuit was filed; (c) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of BB&T's lawsuit against them.

60.    The Lawsuit Class, as defined above, is identifiable. The Named Plaintiff is a member of the Lawsuit Class.

61.    The Lawsuit Class consists, at a minimum, of several hundred persons who entered into credit contracts in Maryland which were assigned to BB&T and who were then sued in Maryland by BB&T under the credit contracts. This Lawsuit Class is thus so numerous that joinder of all members is clearly impracticable.

-14-

62.    There are questions of law and fact which are not only common to the Lawsuit Class but which predominate over any questions affecting only individual class members. The common and predominating questions include, but are not limited to:

(a) Whether BB&T included the social security numbers, drivers license numbers or other private information when it filed suit against the borrowers who were sued;

(b) Whether BB&T engaged in an unfair and deceptive trade practice by disclosing the social security numbers, drivers license numbers or other private information of the Lawsuit Class;

(c) Whether declaratory and injunctive relief is proper, to force BB&T to take corrective measures to redact this information from all lawsuits it has filed or is currently prosecuting Maryland, and to prevent BB&T from continuing to disclose the social security numbers, drivers license numbers or other private information of the Lawsuit Class and to compel BB&T's compliance with Maryland law.

63.    Claims of the Named Plaintiff are typical of the claims of the respective members of the Lawsuit Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of BB&T. The prosecution of separate actions by individuals members of the Lawsuit Class would create a risk of establishing incompatible standards of conduct for BB&T, within the meaning of Maryland Rule 2-231(b)(1)(A).

64.    BB&T's actions are generally applicable to the respective Lawsuit Class as a whole, and the plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

65.    Common questions of law and fact enumerated above predominate over questions

affecting only individual members of the Lawsuit Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(b)(3). The likelihood that individual members of the Lawsuit Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action. The Named Plaintiff is adequate and will fairly represent the interests of the Lawsuit Class in accordance with their affirmative obligations and fiduciary duties

## COUNT ONE
### (MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)
### ON BEHALF OF THE REPOSSESSION CLASS

66.     Plaintiffs re-allege and incorporate by reference the allegations set forth above, and further allege:

67.     Maryland's Credit Grantor Closed End Credit Provisions, CL § 12-1001 *et seq.*, permit credit grantors such as BB&T to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with CLEC provisions relating to repossession and sale of motor vehicles. If a credit grantor timely provides a borrower with the required post-repossession notices, accounting and disclosures mandated by CL § 12-1021(j), the credit grantor may obtain a deficiency judgment and retain the interest, costs, fees and other charges assessed during the course of its extension of credit. In the event, however, that the credit grantor fails to timely provide the required post-repossession notices, accounting and disclosures, the credit grantor may not obtain a deficiency judgment (CL § 12-1021(k)(4)) and must forfeit all interest charges, fees and other charges with respect to the loan (CL § 12-1018(a)(2)).

68.     In violation of CL § 12-1021(j)(1)(ii), BB&T failed to notify the Named Plaintiff and

members of the Repossession Class of the time and place where their repossessed vehicles would be sold in writing by certified mail, return receipt requested, sent to the borrower's home address at least ten days prior to the sale.

69.    In violation of CL § 12-1021(j)(2), BB&T failed to provide Named Plaintiff and members of the Repossession Class with a written full accounting and the disclosures mandated by this statute after the sale of the repossessed motor vehicles, including (1) a statement of the purchaser's name, address, and business address; and (2) a statement of the number of bids sought and received.

70.    BB&T knowingly violated CLEC, § 12-1021(j), which makes it subject to mandatory trebling under CL Sec. 12-1018(b).

### COUNT TWO
### (BREACH OF CONTRACT)
### ON BEHALF OF REPOSSESSION CLASS

71.    The Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

72.    Maryland's Credit Grantor Closed End Credit Provisions law was in effect at the time the credit contracts of the Named Plaintiff and all members of the Repossession Class were signed by them and assigned to BB&T. The provisions of the CLEC statute become a part of the contract just as if the parties expressly included the CLEC provisions in their credit contracts. In addition, BB&T's assignors explicitly referred to and incorporated CLEC in their contracts with the Named Plaintiff and the other members of the Repossession Class.

73.    When BB&T violated CLEC as set forth above, it materially breached its contracts with the Named Plaintiff and the members of the Repossession Class.

74.    As a result of BB&T's breaches of contract with the Named Plaintiff and members of the Repossession Class, the Named Plaintiff and members of the Repossession Class have been damaged. The Named Plaintiff and members of the Repossession Class have been deprived of the substantial rights granted to them by CLEC, including (1) the right to know when and where the sale of their vehicle would take place, (2) the ability to fully evaluate whether to reinstate their account or redeem their vehicle, (3) the information needed to evaluate whether BB&T's demand for payment of the alleged deficiency was reasonable, (4) the information needed to determine whether the sale of the vehicle was commercially reasonable, (5) the ability to determine whether there should have been surplus funds available for return by BB&T, (6) the information needed to defend against any suit for a deficiency judgment. In addition, the Named Plaintiff and the Repossession Class also sustained financial damages as a result of BB&T's failure to return all of the interest, costs, fees and other charges collected on their loans, and the Named Plaintiff and the Repossession Class sustained other damages and losses.

## COUNT THREE
## (DECLARATORY AND INJUNCTIVE RELIEF)
## ON BEHALF OF REPOSSESSION CLASS

75.    Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

76.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Proc. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiff and members of the Repossession Class and the consumer protections embodied in Maryland's Credit Grantor Closed End Credit Provisions.

77.     BB&T maintains it may collect a deficiency balance from members of the Repossession Class even though BB&T failed to provide the Named Plaintiff and members of the Repossession Class with timely and complete post-repossession notices required by CLEC.

78.     The Named Plaintiff and members of the Repossession Class have received or will receive collection notices from BB&T and/or debt collectors demanding payment of the alleged deficiency balance, and have been sued or will be sued for collection of the sums which BB&T alleges are due.  Moreover, BB&T also notifies credit reporting agencies to which it reports (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and credit history of the Named Plaintiff and the Repossession Class.

79.     These practices continue and will continue unless and until this Court declares and affirms that BB&T may not collect any alleged deficiency balance unless BB&T has provided the Named Plaintiff and members of the Repossession Class with timely and complete notices containing the information whose disclosure is mandated by CLEC.

80.     This presents an actual, justiciable controversy between the parties relating to the construction of the RISCs of members of the Repossession Class and the application of Maryland's Credit Grantor Closed End Credit Provisions to those contracts because BB&T has sought or likely will seek to collect on the alleged deficiency balances, including through filing a collection action in court, and BB&T continues to harm members of the Repossession Class by reporting false and derogatory information to credit reporting agencies regarding the accounts in question.

81.     The Repossession Class have a right to be free from BB&T's attempts to collect deficiency balances, interest, fees, costs and other charges which are not collectible as a matter of law under the terms of its contracts with the Repossession Class.

82.   The benefits to the Repossession Class in obtaining an injunction outweigh any potential harm BB&T would incur as a result of an injunction, under the balance of the harms test, as BB&T has no legal or contractual right to collect deficiency balances from the Repossession Class, and the Repossession Class would greatly benefit from being relieved of BB&T's attempts to collect these illegal charges.

83.   The Repossession Class will suffer irreparable injury unless the requested injunctions are granted, as BB&T will continue to attempt to collect, and collect, deficiency balances, interest, costs, fees and other charges from them in violation of the law, and BB&T will report erroneous and derogatory information to the credit reporting agencies regarding the Repossession Class based on the illegally imposed charges.

84.   The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing BB&T from violating the statutory and common law of the State of Maryland in its repossession and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

85.   The Named Plaintiff and members of the Repossession Class are likely to succeed on the merits of this action, as CLEC explicitly requires that BB&T send certain notices to the Repossession Class that it did not send.

**COUNT FOUR**
**(RESTITUTION AND UNJUST ENRICHMENT)**
**ON BEHALF OF THE REPOSSESSION CLASS**

86.   Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

87.   By paying money on deficiency balances, interest, fees, costs and other charges

claimed by BB&T, the Named Plaintiff and Repossession Class conferred the benefit of these illegally collected charges upon BB&T.

88.     BB&T accepted the benefits conferred upon them by the Named Plaintiff and the Repossession Class when it accepted the money paid toward illegally assessed deficiency balances, interest, costs, fees and other charges.  BB&T was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

89.     BB&T's collection, acceptance and retention of these charges, when it was not entitled to these charges as a matter of law, is and was and continues to be unjust and inequitable, and BB&T has not refunded the charges to the Named Plaintiff or members of the Repossession Class.  BB&T should not be permitted to retain the benefits of those illegal charges.  BB&T's continued withholding of the illegal charges is improper.

90.     The Named Plaintiff and members of the Repossession Class conferred these unjust benefits upon BB&T after and as a result of BB&T's illegal misconduct as set forth herein.

### COUNT FIVE
### (MARYLAND CONSUMER PROTECTION ACT)
### ON BEHALF OF THE REPOSSESSION CLASS

91.     The Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

92.     Maryland's Consumer Protection Act ("CPA"), Md. Comm. Law Code Ann., § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices regarding, among other things, the extension of consumer credit and in the collection of consumer debts. CL § 13-303(3) and (4).

93.     As a "person" under the CPA, CL § 13-101(h), BB&T is prohibited from engaging in

unfair and deceptive trade practices.

94.     The CPA specifically prohibits BB&T from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers. CL § 13-301(1).

95.     The CPA further prohibits BB&T from failing to state a material fact if the failure deceives or tends to deceive. CL § 13-301(3).

96.     In violation of the CPA, CL § 13-303(3)-(4) and § 1301(1), BB&T told the Named Plaintiff and the Repossession Class in writing that their vehicles would be sold on an unspecified date, at an unspecified time, in an unspecified location, thereby, among other things, misrepresenting the final date up to which the vehicle could be redeemed.  Further, BB&T notified the Named Plaintiff and the Repossession Class in writing that the Named Plaintiff and the Repossession Class owed BB&T deficiency balances which, in fact, the Named Plaintiff and members of the Repossession Class did not owe and which BB&T could not collect, due to its failures to comply with the law.  These written statements were false and misleading and tended to and did deceive the Named Plaintiff and the Repossession Class, many of whom made payments to BB&T which were not due and owing.

97.     In violation of the CPA, CL § 13-303(3) - (4) and § 13-301 (1) and (3), BB&T failed to disclose to the Named Plaintiff and the Repossession Class the date and time of sale, and the material facts that BB&T did not have the right to collect a deficiency judgment.  This failure to disclose material facts led members of the Repossession Class to make payments which were not due and which they would not have made had BB&T informed them of the material facts.

98.     BB&T engaged in unfair and deceptive practices by collecting and attempting to

collect on alleged debts which, in fact, were not due, and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, § 13-101 *et seq.*, including CL §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

99.     As a result of BB&T's unfair and deceptive trade practices in violation of the CPA, members of the Repossession Class were induced to make payments to BB&T on alleged deficiency balances, causing members of the Repossession Class injury or loss.

100.     In violation of the CPA, CL § 13-303(3) - (4) and § 13-301(1) and (3), and as part of an effort to compel the Named Plaintiff and the Repossession Class to make payments which were not due, BB&T made false and misleading reports to credit reporting agencies regarding the amounts which the Named Plaintiff and members of the Repossession Class owed on their accounts, causing injury or loss.

WHEREFORE, Plaintiffs pray that the following relief be granted to the Named Plaintiff and the Repossession Class on their claims set forth above:

A.     The Court enter a declaratory judgment establishing that BB&T may not collect any claimed deficiency balance, or any interest, fees, costs or other charges on a loan account of the Named Plaintiff and members of the Repossession Class;

B.     The Court enter an order granting the Named Plaintiff and members of the Repossession Class a preliminary and permanent injunction prohibiting BB&T from collecting or attempting to collect alleged deficiency balances, or interest, fees, costs or other charges from the Named Plaintiff and members of the Repossession Class;

C.     The Court enter an order requiring BB&T within 30 days to notify all credit reporting agencies to whom it reports that (i) the Named Plaintiff and members of the

Repossession Class have a zero balance on their accounts, and (ii) removing any notation to the effect that the account has been charged off;

D. The Court order that BB&T pay to the Named Plaintiff and members of the Repossession Class the statutory penalties imposed by CLEC, CL § 12-1018(a)(2) by returning to the Named Plaintiff and members of the Repossession Class all sums each paid as interest, costs, fees or other charges;

E. The Court enter judgment in favor of the Named Plaintiff and members of the Repossession Class against BB&T in the amount of all sums paid by the Named Plaintiff and members of the Repossession Class toward the claimed deficiency balance, interest, fees, costs and other charges;

F. Pursuant to CL § 12-1018(b), the Court enter judgment in favor of the Named Plaintiff and members of the Repossession Class against BB&T in an amount equal to three times the interest, costs, fees, and other charges which BB&T collected in excess of that allowed by CLEC;

G. The Court enter an award of pre-judgment and post-judgment interest on all sums award to the Named Plaintiff and members of the Repossession Class;

H. The Court award to the Named Plaintiff and members of the Repossession Class reasonable counsel fees and the costs of these proceedings; and,

I. The Court order such other and further relief as the nature of this case may require.

J. In order to comply with recent Maryland case law, taking into consideration treble damages, cancellation of alleged debt, and compensatory damages for injuries or losses, the *ad damnum* clause at this time, subject to later modification upon further

discovery as to the size of the class, is $4,000,000 (Four Million Dollars).

## COUNT SIX
### (MARYLAND CONSUMER PROTECTION ACT)
### ON BEHALF OF LAWSUIT CLASS

101.   The Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

102.   Maryland's Consumer Protection Act ("CPA"), Md. Comm. Law Code Ann., § 13-101 *et seq.*, provides that a violation of Md. Code Ann. CL § 14-3402 constitutes an unfair and deceptive trade practice.

103.   BB&T violated CL § 14-3402 when it publicly disclosed the social security numbers of the Lawsuit Class.

104.   BB&T violated CL § 14-3502 and 3503 when it failed to maintain and implement procedures to safeguard the drivers' license numbers, account numbers and other private information of the Named Plaintiff and the Lawsuit Class.  In fact, BB&T knowingly and willfully made the information publicly available when it filed it with the lawsuits.

105.   The violation of CL §§ 14-3402, 14-3502 and 14-3503 constitute per se violations of the Maryland Consumer Protection Act.

106.   As a result of BB&T's unfair and deceptive trade practices in violation of the CPA, the Named Plaintiff and members of the Lawsuit Class have been damaged and suffered injury or loss.

107.   To protect themselves, the Named Plaintiff and the Lawsuit Class will incur expenses in connection with the monitoring of their credit information.

## COUNT SEVEN
### (DECLARATORY AND INJUNCTIVE RELIEF)

## ON BEHALF OF LAWSUIT CLASS

108.    The Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

109.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Proc. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legality of the Defendant's disclosure of the social security numbers, drivers license numbers or other private information of the Named Plaintiff and members of the Lawsuit Class.

110.    The Named Plaintiff and members of the Lawsuit Class have had their private information divulged and placed on public records by BB&T, and therefore they have suffered an illegal invasion of privacy, are vulnerable to the identity theft and other injuries or losses.

111.    This dangerous and illegal practice of divulging highly confidential information continues and will continue unless and until this Court declares and affirms that BB&T may not divulge the private information of the Named Plaintiff and members of the Lawsuit Class.

112.    This presents an actual, justiciable controversy between the parties relating to the disclosure of personal information of the Named Plaintiff and members of the Lawsuit Class and the application of Maryland law, CL §§ 13-101 *et seq.*, 14-3401 *et seq.* and 14-3501 *et seq.* because BB&T divulged and continues to divulge the private information of the Named Plaintiff and members of the Lawsuit Class.

113.    The Named Plaintiff and members of the Lawsuit Class have a right to stop BB&T from illegally divulging their private information.

114.    The benefits to the Named Plaintiff and members of the Lawsuit Class in obtaining an

injunction outweigh any potential harm BB&T would incur as a result of an injunction, under the balance of the convenience test, as BB&T has no legal or contractual right to divulge the Named Plaintiff's and the Lawsuit Class' private information and the Named Plaintiff and members of the Lawsuit Class would greatly benefit from being relieved of BB&T's disclosure of their private information.

115.    The Named Plaintiff and members of the Lawsuit Class will suffer irreparable injury unless the requested injunctions are granted, as BB&T will continue to divulge their private information.

116.    The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing BB&T from violating the statutory and common law of the State of Maryland when filing lawsuits, and a compelling interest in seeing the laws of the State of Maryland obeyed.

117.    The Named Plaintiff and members of the Lawsuit Class are likely to succeed on the merits of this action, as Maryland law prohibits the disclosures being made by BB&T.

WHEREFORE, Plaintiffs pray that the Court grant the following relief to the Named Plaintiff and the Lawsuit Class on their claims set forth above:

A.    The Court enter a declaratory judgment establishing that BB&T's disclosure of the private information of the Named Plaintiff and members of the Lawsuit Class is illegal;

B.    The Court enter an order granting the Named Plaintiff and members of the Lawsuit Class a preliminary and permanent injunction prohibiting BB&T from divulging the private information of the Named Plaintiff and members of the Lawsuit Class;

C.   The Court enter judgment in favor of the Named Plaintiff and the Class against BB&T for the injury or loss sustained and for such compensatory damages as the evidence shall warrant including the costs of monitoring that will be incurred by the Named Plaintiff and members of the Lawsuit Class as a result of the Defendant's disclosure of their private information in public records;

D.   The Court enter an award of pre-judgment and post-judgment interest on all sums award to the Named Plaintiff and members of the Class;

E.   The Court award to the Named Plaintiff and members of the Class reasonable counsel fees and the costs of these proceedings; and,

F.   The Court order such other and further relief as the nature of this case may require.

G.   In order to comply with recent Maryland case law, taking into consideration compensatory damages for injuries or losses (including for the danger of identity theft and prevention thereof for the Named Plaintiff and the members of the Lawsuit Class, the *ad damnum* clause at this time, subject to later modification upon further discovery as to the size of the class, is $4,000,000 (Four Million Dollars).

Respectfully submitted,

PETER A. HOLLAND
The Holland Law Firm, P.C.
124 South Street, Ste. 3
Annapolis, MD 21401
(410) 280-6133

SCOTT C. BORISON
Legg Law Firm, LLC

5500 Buckeystown Pike
Frederick, MD  21703

JUSTIN ZELIKOVITZ
1605 5th Street, NW
Washington, DC  20001
(713) 582-8261

ATTORNEYS FOR THE NAMED PLAINTIFF
AND THE REPOSSESSION AND LAWSUIT
CLASSES

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the classes, demands trial by jury.

_____
PETER A. HOLLAND

**Rule 1-313 Certification**

I hereby certify that I am admitted to practice law in the State of Maryland.

JUSTIN ZELIKOVITZ